GRANT, Senior District Judge.
The appellants in this appeal, Jesse Ford and Marvin Madden, are both inmates at the Wisconsin State Prison in Waupun, Wisconsin. On 3 April 1973 Madden wished to send by mail certain legal papers he had prepared in a separate lawsuit. In general, mail at the Wisconsin State Prison is sent by the inmates to a mail room with an inmate stamp coupon affixed. These coupons can be purchased on the first and third Monday of each month and in this case the first Monday of April, 1973, was April 2nd. Madden had two stamp coupons but they had previously been addressed to others and he was under the belief that for this reason those coupons could not be used. As a result, Madden gave the legal papers to Ford, a friend of his, so that Ford would put one of his stamp coupons on the envelope and forward it to the mail room.
In the mail room, prison personnel noted that Ford’s stamp coupon was being used to post Madden’s mail and since possession of another inmate’s property is a violation of the “no-passing” rule,[1] the material was returned to Ford. By 5 April 1973 Madden had received the papers back but, for some unexplained reason, he did not again mail the pleadings until 11 April 1973.
*410 The appellants filed suit in the court below, with jurisdiction predicated upon 28 U.S.C. § 1343(3), to recover monetary and injunctive relief for claims asserted to arise under 42 U.S.C. § 1983. On 7 January 1977 a trial was held and at the close of the appellants’ case, the District Court granted appellees’ motion to dismiss for failure to establish the denial of any constitutional rights.
Appellants first assert that the mail policy in effect on 3 April 1973 unreasonably interfered with Madden’s access to the courts. In analyzing a claim of denial of access to the courts, as the District Court noted, it must be recognized that due process of law requires no more than reasonable access to the courts. Knell v. Bensinger, 489 F.2d 1014 (7th Cir. 1973). Here, it is beyond dispute that Madden’s pleadings were returned because they were accompanied by Ford’s stamp coupon. Thus, it is not entirely clear how Madden can claim that the mail policy interfered with his access to the courts since the reason for the return was the “no-passing” rule and not the mail policy.
In any event, under the mail policy all inmates with stamp coupons could send mail when desired. Inmates without stamp coupons and without means to purchase stamp coupons could attach an inmate order form so that the mail would still be mailed. Even inmates without stamp coupons but with the means to purchase stamp coupons could send their mail if it was of an emergency nature. The above formula is completely consistent with reasonable access to the courts. The inmate can send his mail subject only to compliance with the rules and regulations of the institution. Furthermore, requiring inmates, who have the funds to purchase stamp coupons, to account for their failure to have planned ahead, or for the emergency which prompts their need for stamps, has a rational relationship to the prison’s teaching responsibility and to orderly maintenance of the institution. Accordingly, the District Court ruling that the mail policy did not deny reasonable access to the courts was correct.
The appellants next challenge the “no-passing” rule on the ground, that they retain property interests, even after conviction, which may only be curtailed by the state if a showing is made that the regulation concerned is justified by legitimate interests of penal administration. Appellants assert that the “no-passing” rule is far broader than any property control regulation need be and therefore amounts to a denial of their constitutional rights to possession of property.
Appellants’ reliance on Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), is misplaced. In that case, the Court held that the need to maintain security, order, and the furtherance of rehabilitation, was valid basis for prison administrators to enact regulations that only incidentally affect first amendment privileges. This would be true as long as the regulation is no greater than that necessary to further the legitimate government interest involved. Here, it seems obvious that the prison officials may, as a condition of confinement, establish rules and regulations concerning the possession of property by inmates. As the District Court found, and we agree, the security of the institution would be threatened by the absence of a property transfer regulation and the “no-passing” rule here involved was rationally related to meeting that security need. Those findings will not now be disturbed.
Finally, the appellants take exception to the order of the District Court granting appellees’ motion to limit the admissibility of a new stamp regulation, promulgated 26 November 1976, to the injunctive relief claim only. This new policy changed the prior policy at the state prison in that the new policy allowed limited possession of negotiable items within the prison. Appellees moved to exclude proof of the later occurring event which could have been used to attempt to prove culpable conduct on their part. The basis for the ruling *411 was Federal Rule of Evidence 407.[2] The District Court was correct in establishing this limitation since there can be no doubt that the new policy was a measure taken after the event in litigation, which measure, had it existed at the time, would have avoided the event in litigation. The appellants intended to use this new policy as proof of culpable conduct. While appellants urge us to read behind the explicit wording of Rule 407, we are not required and accordingly, decline to do so.
The judgment of the District Court is affirmed.
AFFIRMED.

. The “no passing” rule stems from two prison rules. The first, Section 3.03, provides that: “POSSESSION. No inmate shall have in his possession, on his person, in his cell, or under his control, any property not authorized.” The second, Section 3.04, provides that: “TRANSFERRING. No inmate shall pass to anyone, or accept from anyone, any property without authorization.”

. Rule 407 provides:
When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in con-
nection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.