UNITED STATES of America,
Plaintiff-Appellee,

v.

Carney GOODMAN,
Defendant-Appellant.

No. 85–3229.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1986.

Decided July 29, 1986.

Victor M. Pilolla, Oak Park, Ill., for defendant-appellant.

Stephen Crocker, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Following a bench trial, on October 25, 1985, the district court found Carney Goodman guilty of conspiracy to steal mail, armed robbery of a postal carrier, use of a firearm in a crime of violence, possession of a stolen check, forgery, and unlawful possession of a postal key. The appellant argues that his convictions for the armed robbery of a postal carrier and use of a firearm in a crime of violence must be reversed because they were obtained through the use of an unreliable in-court identification. We hold that the district court correctly found that there was no substantial likelihood of misidentification and therefore properly admitted the in-court identification. Accordingly, we affirm the convictions for armed robbery of a postal carrier and use of a firearm in a crime of violence.

## FACTS

On February 9, 1985, Albert Goree, a United States Postal Service letter carrier, was placing mail into mailboxes located in the vestibule of an apartment building. The vestibule was lighted by the natural, outdoor lighting passing through a glass door at the entrance. Mr. Goree had opened the mailboxes with a special postal key issued by the Postal Service. As he was putting letters into the boxes, a short black man entered the vestibule and proceeded past him as if to continue to the apartments. Mr. Goree noticed the man because he wore a ski mask. As this man passed, a second man entered the vestibule and pointed a silver and brown revolver at Mr. Goree. The second man's face was not covered and Mr. Goree was able to observe his features for fifteen to twenty seconds before the first man reached over Mr. Goree's shoulder, slammed the mailbox doors shut, told him it was a holdup and pulled Mr. Goree's skullcap down over his eyes. The robbers took the postal key, some mail, Mr. Goree's wallet and his house keys.

Immediately after the robbery, Mr. Goree filed reports with the police and with a postal inspector. Mr. Goree told the investigators that the second man, who entered the vestibule with the gun, was approximately 5 foot 10 inches or 5 foot 11 inches tall, and weighed 160–65 pounds. He had a slight mustache, a bad complexion, a thin-lipped, silly grin, and brown, round-rimmed glasses. The investigators' reports also indicate that Mr. Goree described the offender as having brown eyes. Two days after the robbery, Mr. Goree put together a composite of the armed robber from an identikit. Although it was not a completely accurate sketch, Mr. Goree stated that it was the best that he could do with the material available.

On February 13, 1985, postal inspectors showed Mr. Goree a photospread of approximately six suspects. The defendant's photograph was not included in the group and Mr. Goree did not identify any of these pictures. On April 2, 1985, almost two months after the robbery, postal inspectors met Mr. Goree on his route. They told him that they had some people in custody and had recovered his keys. Suppression Tr. at 65. The inspectors showed Mr. Goree another photospread. Immediately, Mr. Goree identified the defendant's photograph. Suppression Hearing Tr. at 38. He said he recognized the glasses, the poor complexion and the little half grin. *Id.* Mr. Goree also recognized the other pictures in the photospread as the same ones that he had seen on February 13. Suppression Hearing Tr. at 39.

Arguing that the pre-trial identification was unconstitutionally suggestive and that any in-court identification would be tainted and unreliable, the defendant moved to suppress both the pre-trial identification and any in-court identification that Mr. Goree might make. The district court held a suppression hearing during which Mr. Goree testified about the robbery and the subsequent identification. The court also considered the initial reports indicating that Mr. Goree had described the offender as having brown eyes and the court was apprised that Mr. Goodman actually had an eye injury which made one pupil appear white. The district court ruled that, because the photographic identification was impermissibly suggestive, it could not be used at trial. R. at 35. The court found, however, that, under the totality of the circumstances, Mr. Goree had an independent basis for identifying Mr. Goodman "that is sufficiently reliable to allow an in-court identification."

Though relatively brief, Goree saw the robber clearly and under good lighting conditions; Goree was attentive, hardly a casual passerby; his description of his assailant was accurate and has remained consistent; his level of certainty as viewed by this court was quite high (which in turn diminishes the importance of the time between the robbery and the photo identification); and Goree refused to identify any of the photos at the first session when Goodman's picture was not among those displayed.

R. at 35. The district court decided to permit Mr. Goree to make an in-court identification of his assailant.

At trial, Mr. Goree identified Mr. Goodman as the man who robbed him. He gave substantially the same description that he had given to the investigators at the suppression hearing. Trial Tr. at 43. However, he said that the offender wore glasses with a medium tint and that he did not see the robber's eyes. *Id.* During cross-examination, the defense counsel completely explored the inconsistency between Mr. Goree's trial testimony and the initial descriptions he gave the police and the postal inspector. Trial Tr. at 106–08. The court also observed the defendant's eye.

In addition to Mr. Goree's identification testimony, several postal inspectors also supplied information relevant to the counts at issue in this appeal. On April 1, 1985, postal inspectors had been observing a mailroom at a different apartment building. They saw two men with walkie-talkie radios heading towards the building. The men entered the mailroom. As the postal inspector approached one of the individuals and identified himself as a postal inspector, the individual, later identified as the defendant, Carney Goodman, fled. After a chase, the postal inspectors caught Mr. Goodman. He did not have a postal key in his possession. However, a search of the area, the next day, uncovered the postal key which had been taken from Mr. Goree in the February 9th robbery. The judge weighed all the evidence and found Mr. Goodman guilty. On appeal, the defendant argues that the admission of the in-court identification deprived him of his right to a fair trial.

In *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Supreme Court of the United States enunciated the basic principle in the area. Each case "must be considered on its own facts...." *Id.* at 384, 88 S.Ct. at 971. Convictions "based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photo-

graphic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.*

In *United States v. Wisniewski*, 741 F.2d 138, 143 (7th Cir.1984), and *United States ex rel. Hudson v. Brierton*, 699 F.2d 917, 923–25 (7th Cir.1983), this court relied on the factors delineated in *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), to determine when an in-court identification may be admitted despite a suggestive pre-trial identification. Those factors are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–83.

In this case, Mr. Goree observed the defendant for fifteen to twenty seconds under good lighting conditions. Suppression Hearing Tr. at 28. Mr. Goree was not merely a casual observer. When the first man entered the vestibule wearing a ski mask, Mr. Goree became concerned that he might be the victim of a robbery. Suppression Hearing Tr. at 50. His attention is evidenced by the fact that, immediately after the robbery, he accurately described the height, weight, complexion, and facial features of the defendant. Initially, Mr. Goree reported the offender had brown eyes; at trial, he was not as sure. He also wavered in his description of the tint of the robber's eyeglasses and he never indicated that the offender had a whitened pupil. Defense counsel informed the court that, in fact, at times, the defendant wore very dark glasses. Supression Hearing Tr. at 78. The description was not perfect but it was "more than ordinarily thorough." *Biggers*, 409 U.S. at 200, 93 S.Ct. at 383. The consistencies between Mr. Goree's de-

scription immediately following the robbery and the defendant's appearance establish that Mr. Goree had an independent basis for identifying the defendant. The discrepancies do not create a substantial likelihood of misidentification. The trier of fact must assess the inconsistencies when determining the weight that should be accorded to the identification. See *United States v. Flick*, 719 F.2d 246, 249 (7th Cir.1983).

 The district court found that Mr. Goree demonstrated a high degree of certainty about the identification. He had refused to identify anyone in the first photospread. He immediately picked Mr. Goodman's picture out in the second photospread. Approximately two months elapsed between the robbery and the suggestive pre-trial identification and five months had passed before Mr. Goree identified the defendant in court. The district court weighed this lapse of time against Mr. Goree's certainty and concluded that the identification was reliable. Considering the district court's opportunity to observe the witness, the good, though not perfect, description of the defendant and Mr. Goree's refusal to identify anyone in the first photospread when the defendant's picture was not present, we do not believe that the lapse of time between the robbery and the identification makes the identification unreliable. Applying the *Biggers* factors, under the totality of the circumstances, we find no substantial likelihood of misidentification. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.