Donald COLLEY, Petitioner,

v.

Howard PETERS, III, Respondent.

No. 91–1264.

United States District Court,
C.D. Illinois.

Dec. 7, 1992.

Arthur J. Inman, Peoria, IL, for petitioner.

Steven J. Zick, Asst. Atty. Gen., Chicago, IL, Karen Alice Kloppe, Atty. Gen., Arleen Floren, Asst. Atty. Gen., Springfield, IL, for respondent.

## ORDER

McDADE, District Judge.

Presently before the Court are Petitioner Donald Colley's Original (Doc.# 4) and Amended Petitions (Doc.# 17) for a Writ of Habeas Corpus.[1] The question presented for

---

1. Only Counts I and II of the Original Petition (Doc. # 4) are being reviewed. The original

review is whether Petitioner's trial and appellate counsel were ineffective in violation of the Sixth Amendment and specifically, whether the allegedly suggestive pretrial identification procedures used by the police in violation of the Fourteenth Amendment's due process clause were cured by an independently reliable in-court identification. Although the Court reaches the merits of Colley's claims, the Original Petition, Counts I and II, and the Amended Petition, Count III, are DISMISSED with prejudice pursuant to 28 U.S.C. § 2254(a).

## I. PROCEDURAL HISTORY

Petitioner, Donald Colley, filed his Original Petition for Habeas Corpus on October 3, 1991. In this Petition, Colley raised the following three claims.

(1) Petitioner was not proven guilty of aggravated criminal sexual assault beyond a reasonable doubt where the aggravating factor of bodily harm did not occur until after the sexual assault.

(2) Extended term sentences were erroneously imposed where the victim was not shown to be physically handicapped and the Petitioner's conduct was neither brutal nor heinous.

(3) Petitioner received ineffective assistance of counsel when his attorney filed an *Anders'* brief on appeal from the denial of his post-conviction petition.

Counts I and II of the Original Petition allege violations of state law, not federal due process rights guaranteed to Petitioner by the Constitution or laws of the United States and therefore do not state a constitutional claim reviewable by a habeas court under 28 U.S.C. § 2254(a).[2] Thus, only amended Count III will be reviewed by the Court.

Regarding amended Count III, Respondent answered and asserted that Colley could not mount an ineffective assistance of counsel challenge to his post-conviction representation because there is no constitutional right to assistance of counsel in state collateral proceedings. The Court dismissed Colley's ineffective assistance claim but gave him leave to amend to try to put before the Court the claims underlying the ineffective assistance claim, namely, that (1) the conviction was obtained in violation of Colley's due process rights resulting from Colley being subjected to a suggestive pretrial identification by the victim; (2) the arrest was executed in violation of the rights afforded to him under the Fourth and Fourteenth Amendments without the aid of an arrest warrant and/or probable cause; (3) his conviction was based upon perjured testimony and fabricated evidence; (4) he was denied effective assistance of trial counsel; and, (5) he was denied effective assistance of counsel on his first appeal as of right.

Colley filed an amended Count III of his Petition in which he stated the following grounds for relief.

A. Petitioner was denied due process by reason of an unduly prejudicial, suggestive pretrial identification procedure.

B. Petitioner was arrested without warrant for arrest and without any probable support for arrest in violation of rights secured to him under the *IV* and *XIV* Amendments to the United States Constitution.

C. Petitioner's trial counsel was ineffective:

1. Trial counsel did not pursue the issue in A. and B. above;

2. Trial counsel did not adequately prosecute Petitioner's rights to protect him from inadequate evidence.

D. Petitioner's original appellate counsel did not present the foregoing claims so that petitioner could obtain appellate

---

Count III was dismissed by Court Order on February 28, 1992 (Doc. # 15), with leave to file an Amended Petition on Count III.

**2.** These claims were raised on direct appeal and dismissed by the Illinois Appellate Court. *People v. Colley*, 188 Ill.App.3d 817, 136 Ill.Dec. 126, 544 N.E.2d 812 (Ill.App.3rd Dist.1989). Colley does not challenge the constitutionality of the state statutes at issue. Thus, even if the state courts erred in application of the statutes, state remedies were available to correct those errors. A federal court cannot grant habeas relief "because a state court committed an error of state law." *Taylor v. Gilmore*, 954 F.2d 441, 448 (7th Cir.1992). *See also, Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

protection of the rights denied him in the trial court.

Colley did not raise the claims contained in the Amended Petition (Count III) on direct appeal. He did raise the claims in a petition for post-conviction relief. In its Answer to the Amended Petition, Respondent moved for summary dismissal of Count III on the grounds that Petitioner had procedurally defaulted his post-conviction claims on appeal,[3] directing the Court's attention to the Original Habeas Petition. In the Original Petition, Colley briefly stated that his post-conviction appeal was based on two trial court errors:

(1) dismissal of the post-conviction petition without the appointment of counsel;

(2) dismissal of the post-conviction petition without an evidentiary hearing.

■ On May 28, 1992, the Court ordered the Respondent to provide the appellate court transcripts of Petitioner's post-conviction appeal to determine whether he had procedurally defaulted the claims presented in his post-conviction petition. Having reviewed those transcripts, it appears evident that Petitioner did not procedurally default his claims; nor did he fail to exhaust them.[4] The Attorney General's assertion that Petitioner procedurally defaulted his post-conviction claims on appeal is erroneous.[5] Procedural default occurs only when the absence of available state remedies or a state procedural rule precludes further state review of an unexhausted federal claim.[6] *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac*,

456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570–71 n. 28, 71 L.Ed.2d 783 (1982); *See also Nutall v. Greer*, 764 F.2d 462, 465 (7th Cir.1985); *Resnover v. Pearson*, 965 F.2d 1453 (7th Cir.1992); *Lane v. Richards*, 957 F.2d 363, 366 (7th Cir.1992) ("[a] procedural bar to relief in state court means that there is no available state corrective process within the meaning of 28 U.S.C. § 2254 and thus establishes exhaustion.").

■ However, one look at the *Anders'* brief filed on appellate review of the post-conviction petition reveals that the claims in amended Count III were exhausted, because they were presented to the appellate court and denied review. The fact that the state appellate court did not independently address the merits of each claim is irrelevant. A claim is exhausted so long as the briefs presented to the state court included the claim. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Wallace v. Duckworth*, 778 F.2d 1215, 1223 (7th Cir.1985). Federal law only requires a petitioner to fairly present the substance of his constitutional claims to the highest state court, giving this court a "full and fair opportunity" to rule on the merits of federal claims. *See Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991); *Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570–71 n. 28, 71 L.Ed.2d 783 (1982). The appellate court dismissed the post-conviction petition,[7] and the Illinois Supreme Court affirmed.[8] Therefore, because Colley exhausted his fed-

---

**3.** Respondent's contention is that Colley did not present the claims contained in the amended Count III on state collateral appeal because he cited two different basis' for the appeal in his habeas petition.

**4.** The state did not raise exhaustion as a defense, but it is relevant to note that Petitioner's direct appeal and post-conviction claims were exhausted by final judgment on those claims in the Illinois Supreme Court, as required by 28 U.S.C. § 2254(b).

**5.** Apparently the Assistant Attorney General believes that Colley's misstatement of his basis for post-conviction appeal in the original habeas petition constitutes a procedural default; but the fact that Colley misstated the basis for appeal in the habeas petition is irrelevant because the

claims raised on post-conviction appeal were proper.

**6.** In procedural default cases, the only way a prisoner's federal claim will be heard on habeas review is if "cause and prejudice" can be demonstrated for the failure to initially raise the claim in state court. In rare circumstances, the prisoner may allege that the conviction is a fundamental miscarriage of justice. However, this standard virtually requires the prisoner to prove "actual innocence." *Sawyer v. Whitley*, —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

**7.** *People v. Colley*, 204 Ill.App.3d 1109, 174 Ill. Dec. 311, 598 N.E.2d 508 (Ill.App.3rd Dist.1990).

**8.** *People v. Colley*, 137 Ill.2d 667, 156 Ill.Dec. 564, 571 N.E.2d 151 (1991).

eral claims, no procedural default issues exist.

## II. THE FACTS

Because the constitutional claims presented by amended Count III turn on the facts, the Court first reviews the record. In doing so, the Court expressly finds that an evidentiary hearing is not necessary since the essential facts necessary to resolve Colley's constitutional claims are provided by the trial record. *Matta–Ballesteros v. Henman,* 896 F.2d 255, 258–59 (7th Cir.1990); *Resnover v. Pearson,* 965 F.2d 1453, 1457 (7th Cir.1992).

Petitioner, Donald Colley, was indicted for the armed robbery and aggravated criminal sexual assault of Mary Logan on March 7, 1988. He was found guilty and sentenced to 40 years in prison.

The relevant facts at trial were as follows. At approximately 4 a.m. on March 7, 1988, Mary Logan, a crippled woman, (R. 6) was forcefully raped (R. 19), robbed (R. 26–27), and cut with a knife (R. 24–25). After the rape, the assailant allowed Logan to go to the bathroom "for about a minute," where the light was on. (R. 21–23).[9] She testified that her head was down, but she was able to look up once and see his face. (R. 22). After she left the bathroom, the assailant hit her in the right eye (R. 23) and threatened to kill her if she refused to give him money. (R. 23). She said she had no money, and they struggled. (R. 23). He then took her downstairs to the kitchen, turned the gas on, closed a window, took a pocketknife and cut her twice on the neck and once on her chin. (R. 23–25). He again demanded money with threats. She then told him her rent money was under her pillow. (R. 26). After taking the money, he set her bedroom dresser and chest on fire and left the house. (R. 26–27).

Logan called her neighbors for help and then called the police. (R. 28–29). When the police arrived, she told them that she had been raped, robbed, and cut with a knife, adding that the assailant had also taken her jewelry. (R. 29–30). Apparently, Logan described the assailant to Mrs. Tidwell, her neighbor, and the neighbor gave Officer Allen the initial description of the suspect, because Logan was too "upset" to do more than approximate the assailant's size. (R. 64–65) (Officer Adams R. 83–84).

Mary Logan was then taken by ambulance to St. Francis Hospital. (R. 65). At the hospital, Officer Allen was able to obtain from her a description of the assailant by asking her to compare the assailant's size to his own. She described him as a "large" black male, about 5'10, 180 pounds (the officer's size), with short black hair, in his early 20's with a thin moustache, a goatee, and a missing tooth on the right side of his mouth. (R. 70). At trial, she gave the same description. (R. 21–22).

On March 7th, at 9 a.m., the morning of the crime, Logan was taken to the Peoria police department to look at pictures of suspects. (R. 30). On cross-examination she said she positively identified Colley in one of the pictures she was shown (R. 50), but on direct-examination did not admit to making a positive identification until March 8th. (R. 30–31).

Detective Millard testified that on March 8th, Logan viewed 14 pictures "consisting of black males with similar physical descriptions of that of Donald Colley" (R. 108) and positively identified Colley as her assailant, stating "that's him" (R. 109, 32, 50), and nodding affirmatively when the Detective asked if she was certain.[10] (R. 108). Both the victim and the detective indicated that there were no suggestive instructions given to her before the photographs were displayed. (R. 31).

The *Anders'* brief represents that the trial record indicates that Colley was arrested on March 11th. The Court's review of the record has not uncovered any mention of an arrest, nor the reasons or circumstances surrounding Colley's arrest. The record merely indicates that on March 9, 1992, Colley voluntarily agreed to answer questions at the police station (after being advised of his Mi-

---

**9.** It is not clear from the record whether the light was on during the rape which preceded her entry into the bathroom, or whether the light was turned on once they entered.

**10.** The Detective hedged a bit on the date of this identification on cross-examination. (R. 118)

randa rights) and to give physical specimens to the police at St. Francis. (R. 111–114). Questioning of Detective Millard then moved from March 9th to March 16th, the day Logan identified Colley in the lineup. (R. 113). The record does not indicate how Colley got to this lineup, nor what happened to him after the positive identification was made. (R. 113–114).

The record does indicate that on March 16, Logan went to the police station to see more pictures. (R. 32). She picked out Donald Colley's picture (R. 32–33, 52) and was then ushered to a five man line-up where she again picked out Colley. (R. 32–33, 52) (R. 114). Colley proved to be approximately 6 feet tall, weighing 280 to 300 pounds. (R. 119).

Cross-examination of the witness demonstrated that she was very confused while giving testimony. She was impeached on the fact that she told the police the assailant had anal intercourse with her (R. 38–39) (police statement, R. 67), but it is clear from her testimony that she understood few if any of the questions put to her, as demonstrated by the dialogue concerning whether the kitchen or the bathroom light was turned on first. (R. 40–41). Later testimony indicated that she had left the kitchen light on when she went to bed at 12:30 a.m., (R. 48) so that, in fact, she had turned that light on first, and it had remained on when the assailant entered her home and then later when he took her into the kitchen. The victim also appeared "confused" when asked which side of assailant's mouth the tooth was missing. On direct examination, she pointed to the right side, (R. 21), and on cross, she pointed to the left. (R. 41–42). Similarly, when asked which eye was hit, on direct she pointed to the right (R. 23) and on cross she pointed to the left. (R. 42).

## III. BACKGROUND

In amended Count III, Colley has made two independent constitutional challenges— the alleged illegal arrest and suggestive pre-trial identification—which he also states as a basis for his ineffective assistance of counsel (IAC) claims. The court will address the arrest and pre-trial identification claims in light of the IAC claims, since it is upon the merits of these claims that the IAC claims succeed or fail. However, the standards of review for the IAC claims are different than those for the independent claims and must be analyzed separately.

Although Colley had a right to effective assistance of counsel in his original trial and on his first appeal as of right, *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), *Prihoda v. McCaughtry,* 910 F.2d 1379, 1386 (7th Cir. 1990), he has not alleged facts which indicate that his trial and appellate counsel were ineffective under the standards established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* established a two-part test. First, Colley must show that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 687–88, 104 S.Ct. at 2064. The Court's review of counsel's performance must be highly deferential, and it should avoid the temptation to second-guess counsel. *See id.* at 694, 104 S.Ct. at 2068. Second, Colley must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

1. *Appellate Counsel's Failure To Raise Ineffective Assistance of Trial Counsel on Direct Appeal*

▌ Colley claims that his original appellate counsel was ineffective on direct appeal because counsel did not raise an ineffective assistance of trial counsel claim. Generally, direct appeal is reserved for claims based on facts in the trial record, and post-conviction proceedings are reserved for constitutional claims based on facts outside the record. *Reese v. Peters,* 926 F.2d 668, 671 (7th Cir. 1991); *Romero v. Acevedo,* 1992 WL 22215 (N.D.Ill. Feb. 3, 1992) (No. 92 c 150); *People v. Edwards,* 74 Ill.2d 1, 3, 23 Ill.Dec. 73, 75, 383 N.E.2d 944, 946 (1978).[11] A prisoner can

11. *See also, United States ex rel. Bonner v. Warden, Stateville Correctional Center,* 422 F.Supp.

bring an ineffective assistance of trial counsel claim on either direct or post-conviction appeal, but on post-conviction review the claim must depend on facts outside the record. *Reese*, 926 F.2d at 671. Colley's claim was heard by the state court on post-conviction review—apparently because the independent claims upon which the IAC claim is based were construed as "outside the record." Thus, under the *Strickland* standard, appellate counsel's decision not to raise the ineffective assistance of trial counsel claim appears objectively reasonable, since direct appeal is limited to claims arising from the record. Further, the result of Colley's direct appeal probably would not have been different, even if counsel raised the IAC claim, since the state post-conviction court could have cured the error, but decided instead to dismiss the claim.

### 2. *Sufficiency of The Evidence*

■■■ Colley alleges separately that trial counsel "did not adequately prosecute Petitioner's rights to protect him from inadequate evidence." This Court, like the Illinois Appellate Court, construes this claim as one challenging the sufficiency/weight of the evidence given by the victim. "The standard to be applied by a federal court on habeas review in assessing the sufficiency of the evidence supporting a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States ex. rel. Wandick v. Chrans*, 869 F.2d 1084, 1089 (7th Cir.1989) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Generally, courts are to defer to reasonable inferences drawn by the jury and to the weight it gives the evidence and the witnesses' credibility.

Pursuant to 28 U.S.C. § 2254(e) the state court record has been produced. Although the record demonstrates various inconsistencies in the testimony of the victim and the police officers, the general story, descrip-

tions, and dates appear congruous. Viewing the evidence in the light most favorable to the prosecution, it appears that a rational trier of fact could have found proof of guilt beyond a reasonable doubt. Further, pursuant to 28 U.S.C. § 2254(d)(8), the Court presumes the factual findings to be correct and finds that the record does "fairly support such factual determinations."

## IV. DISCUSSION

Because the Court finds that the independent constitutional claims, which provide the basis for Colley's allegations that counsel was ineffective, are without merit, counsels' failure to raise these claims as motions to suppress during trial or as error on direct appeal does not appear objectively unreasonable, nor does it undermine confidence in the ultimate guilty verdict. Therefore, the Court now turns to a separate analysis of these claims.

### a. Illegal Arrest Claim

■■■ Colley was arrested on March 11, 1988. He claims that he was arrested without a warrant and/or probable cause in violation of his Fourth Amendment rights. He further alleges that police obtained subsequent identification evidence as a result of the "illegal arrest" which should have been suppressed under the "fruit of the poisonous tree" doctrine.[12] However, the trial court record mentions neither the reasons for the arrest nor the circumstances surrounding the arrest. Thus, not enough facts have been alleged to make out either an illegal arrest claim or a "fruit of the poisonous tree" argument, and the Court will not deal with the impact of an illegal arrest on the subsequent identification evidence. Nevertheless, an illegal arrest does not provide a basis for habeas relief, when the state courts have provided an opportunity to litigate the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976); *Willard v. Pearson*, 823 F.2d 1141, 1149 (7th Cir.1987). In *United*

---

11, *aff'd* 553 F.2d 1091, *cert. denied*, 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (D.C.1976).

12. *See generally United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) (citing cases); *Matta–Ballesteros v. Henman*, 896 F.2d 255, 262–63 (7th Cir.1990).

*States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the Court stated that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *Id.* at 474, 100 S.Ct. at 1251. *See also Matta–Ballesteros v. Henman*, 896 F.2d 255, 263 (7th Cir.) *cert. denied*, 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990).

b. Suggestive Pre-trial Identification Claim

 Similarly, a suggestive pre-trial identification, "without more, does not violate due process[,]" *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and thus is not viewed as a defense to a valid conviction based upon an independently reliable in-court identification of the defendant. *Id.* Thus, the question presented on review is whether the in-court identification was "tainted" by the allegedly suggestive pre-trial identification procedures, and therefore unconstitutional, or independently reliable and therefore admissible. Because the Court holds that the victim's in-court identification of Colley was sufficiently reliable to prevent misidentification under the standards set out in *Neil v. Biggers* and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), we do not decide whether the pre-trial identification procedures were unduly suggestive under *Biggers*, 409 U.S. at 198, 93 S.Ct. at 381.[13] We merely assume, for purposes of analysis, that they were suggestive and proceed to a determination of the reliability of the in-court identification.

Colley alleges that before trial the police "suggested" to the victim that he was her rapist by showing her his picture before she viewed him in a lineup. He alleges that the pre-trial identification, by itself, was suggestive and denied him a fair trial in violation of his Fourteenth Amendment right to due process. Colley admits, however, that a suggestive pre-trial identification can be cured by an independently reliable in-court identification, but argues that the reliability of the in-court identification could not be and, in fact, was not demonstrated under the standards of *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972) and *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

1. *The Legal Standards*

In *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151 (7th Cir.1987), the Seventh Circuit set out the standard of review for federal courts making reliability determinations concerning in-court identifications:

> It is ... not our function ... to judge the ultimate accuracy of the identification[ ]; that decision was made by the jury in its role as finder of the facts. Our role is a more limited one of determining if the identification was so unreliable that the defendant's due process right to fair judicial procedures should have precluded an identification at trial.... Thus, we determine here only whether the entire evidence regarding [this identification] afforded [it] sufficient reliability to reach the jury despite any undue suggestiveness....

*Id.* at 1156.

 Generally, the burden of demonstrating reliability is on the government, though courts seldom speak of the issue.[14] The record in this case indicates that neither the government nor the defense made an explicit attempt to prove that the in-court identification was reliable; however, the analysis which follows should demonstrate

---

**13.** The standard for suggestiveness is whether the pre-trial identification procedure produced a "very substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "When the question is the reliability of the in-court identification, the issue is phrased in terms of whether the earlier suggestive procedure created "a very substantial likelihood of irreparable misidentification." Wayne R. LaFave & Jerold H. Israel, Criminal Procedure Vol. 1, § 7.4 at 584.

**14.** Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 7.4 at 585, citing *State v. Cefalo*, 396 A.2d 233 (Me.1979); *Powell v. State*, 86 Wis.2d 51, 271 N.W.2d 610 (1978); *State v. Guay*, 130 N.H. 413, 543 A.2d 910 (1988); *People v. Chipp*, 75 N.Y.2d 327, 553 N.Y.S.2d 72, 552 N.E.2d 608 (1990).

that a trial court hearing the evidence, as stated in the record, could fairly conclude that the government offered sufficient evidence to carry their burden.[15]

 "Reliability" is determined by balancing the "corrupting influence" of the suggestive identification against the "totality of the circumstances." *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In the cases following *Stovall,* five guidelines emerged for making this determination:[16] (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of [her] prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; *Manson,* 432 U.S. at 114–116, 97 S.Ct. at 2253–2254.

### 2. The Case Law

The Supreme Court applied the five-factor test in *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). In *Crews,* the victim was assaulted and robbed at gunpoint.[17] She gave a full description of the assailant the same day. Three days later police took the suspect into custody, took his picture and released him. The next day the victim viewed eight pictures of possible suspects and immediately selected the picture of the defendant.[18] The police then took the suspect into custody and placed him in a court-ordered lineup. The victim who had previously identified the suspect in the picture then positively identified him in the lineup. He was then indicted and arrested. The trial court, district court, and court of appeals found that the police had initially detained the suspect without probable cause, and thus the picture and the identification procedures employed were suppressed as "fruits" of the illegal detention/Fourth Amendment violation. The Supreme Court reversed.

The Supreme Court held that the victim's in-court identification was based on independent and reliable grounds and was not influenced by the concededly suggestive aspects of the police officer's identification procedures. The Court attached particular significance to the fact that she viewed her assailant at close range for a period of 5–10 minutes under excellent lighting conditions and with no distractions. They also gave weight to the timing and certainty of her identification.

Seventh Circuit case law applying *Crews* indicates that the amount of time a victim had to view the witness is particularly important in determining "reliability," as is the certainty and accuracy of the identification. In *United States ex rel. Lee v. Flannigan,* 884 F.2d 945 (7th Cir.1989), the defendant challenged the reliability of the in-court identification, arguing that the victim's in-court identification was tainted by an unduly suggestive hospital room show-up and was therefore unreliable. The Circuit Court applied the five factor test to the facts in the trial court record and found that there was not a substantial likelihood of "irreparable misidentification."

See *United States ex rel. Lee v. Flannigan,* 884 F.2d 945, 948 (7th Cir.1989) (citing cases).

---

**15.** The question of reliability is a mixed question of law and fact which is not subject to a presumption of correctness under 28 U.S.C. § 2254(d); however, the facts in the record necessary to make the reliability determination are subject to this presumption. *See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982). These determinations are not subject to a contrary finding by federal courts unless "on consideration of ... the record as a whole [the federal court] concludes that such factual determinations are not fairly supported by the record." 28 U.S.C. § 2254(d)(8). The Court finds that the state appellate courts findings of fact are supported by the record and thus the § 2254(d)(8) exception does not apply.

**16.** *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

**17.** There were three victims. Two victims positively identified the suspect by looking at him in a picture and in a line-up. The third victim did not participate in the identification procedures.

**18.** The Court noted that the victim previously had viewed over 100 pictures.

In *Flannigan*, the witness was able to view the defendant briefly, several times on a street corner and once inside a cab with the dome light on. Although the record did not expressly indicate that the street corner was well-lit, the witness was able to provide specific details regarding the appearance of the defendant. From these details, the circuit court was able to conclude that the Illinois Appellate Court could make a factual finding, supported by the record, that the street was well-lit. The fact that the defendant had subsequent opportunities to view the defendant in the cab also appeared to be significant. Since findings of fact are presumed correct under *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d), the Seventh Circuit found that the witness "had ample opportunity to form an impression of his assailant's appearance at the time of the crime." *Flannigan*, 884 F.2d at 949.

The second and third factors, accuracy of description and attentiveness towards the assailant, were determined by looking at whether the victim took advantage of his opportunity to view the assailant. *Id.* at 949; *United States ex rel. Haywood v. O'Leary*, 827 F.2d 52, 60 (7th Cir.1987); *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151, 1158 (7th Cir.1987). Attentiveness was found because the victim gave an accurate description of the defendant to the police. Accuracy appeared to be defined, not as a perfect identification—in fact, the witness failed to observe that his assailant had crossed eyes, and could only give police a rough approximation of height, i.e., from 5′10 to 6 feet— but as a description sufficiently similar to the assailant's actual physical characteristics.

The certainty of the identification and the amount of time which passed between the crime and the identification were the fourth and fifth factors reviewed. The circuit court found that the witness' belief that the defendant was his assailant never wavered and was therefore certain. Further, the identification was made five days after the crime. The Court considered five days a short

enough time to support a finding of reliability. In fact, the court of appeals indicated that any period ranging from several weeks to several months did not raise serious questions about reliability. *Walton*, 852 F.2d at 275, *citing United States ex rel. Kosik v. Napoli*, 814 F.2d at 1161.

In *Walton v. Lane*, 852 F.2d 268 (7th Cir.1988), the Seventh Circuit applied the same analysis to a challenged in-court identification, allegedly tainted by an unduly suggestive pre-trial photograph identification. In that case, the victim had an opportunity to observe the assailant for 5–10 minutes in the early afternoon at close proximity. The court of appeals was persuaded that the victim's attention was focused on the assailant because they were alone during the crime and found the fact that the victim was nervous during the initial identification irrelevant given the detailed description the witness made. The circuit court also found that the witness was certain of the identification because he "spontaneously" identified him when shown the defendant's picture.

### 3. Application of the Law

Applying the five factor test to the facts presented in the trial court record, the Court concludes that the in-court identification of Colley had sufficient indicia of reliability to support a guilty verdict.

### a. The Opportunity To View The Assailant

First, the victim in this case provided sufficient details about the assailant to indicate that she had ample opportunity to observe his likeness and form "a definite and specific impression" of his appearance. *Walton*, 852 F.2d at 273. Apparently, she did not, unlike the victim in *Crews* and *Walton*, observe the suspect for a sustained 5–10 minutes, but she did view the suspect in a lighted bathroom and a lighted kitchen at brief intervals, much like the witness in *Flannigan*.[19] She also was able to observe the man well enough to notice that he was a black male, in his early 20's who was fat, wore his hair slicked back,

---

19. The Seventh Circuit found an in-court identification independently reliable where the victim only had a few seconds under street lights at night to view the assailant in *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151 (7th Cir.1987).

a moustache and a goatee, and had a tooth missing on the right side of his mouth, even though her approximations of his height were slightly inaccurate—as was the witness' description in *Flannigan.*

#### b. The Degree of The Witness' Attention

Second, the victim appears to have been attentive because she actually "took advantage of the opportunity" to view her assailant. *United States ex rel. Kosik v. Napoli,* 814 F.2d at 1158. Although she testified that her head was down while in the lighted bathroom, she did look up once, noticing the missing tooth. Further, she was able to approximate the assailant's height, age, weight, complexion, build, and facial characteristics. These details, although not perfectly accurate, were sufficient to satisfy the attentiveness requirement in *Biggers,* 409 U.S. at 200, 93 S.Ct. at 382. The fact that she appeared upset when police initially obtained her identification of the assailant is irrelevant. *Walton,* 852 F.2d at 273. Further, since Logan and her assailant were alone, her focus was surely on the assailant long enough to satisfy the second requirement. *Id.,* 852 F.2d at 274.

#### c. The Accuracy of The Witness' Identification

Third, the victim's identification of Colley was "communicated to the police prior to the challenged identification procedure" *Walton,* 852 F.2d at 274, and proved fairly accurate: when taken into custody, Colley was a black male in his early 20's, who was 6 feet tall, missing a tooth on the right side of his mouth, wore a goatee and beard, and was heavy—weighing 280–300 lbs. Although he proved to be heavier and taller than some of the victim's identifications, the cases indicate that her description need not be perfect. *Walton,* 852 F.2d at 274 (victim's description contained "minor discrepancies" regarding height and weight); *Flannigan,* 884 F.2d at 949 (victim failed to notice assailant's crossed eyes). The identification thus appears sufficiently accurate to satisfy the third requirement.

#### d. The Witness' Level of Certainty

Fourth, according to the record, she also maintained without hesitation, that Colley was her assailant, both at the photograph "show-up" and the line-up, stating each time, "that's him." The photograph show-up included 14 pictures of men with similar physical characteristics. The line-up included five black males. Even if the pre-trial procedures are viewed as unduly suggestive, the level of certainty she displayed at each identification phase provides indices of reliability that satisfy the fourth factor.

#### e. The Time Between The Crime & The Confrontation

Fifth, the victim made her initial identification of the assailant to her neighbors immediately after the crime, and to the police several hours later. This description, although varied as to the height of the defendant, did not change in any significant respect. In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court held that the in-court identification was independently reliable, even though the initial pre-trial identification was not given until seven months after the crime. *Id.,* 409 U.S. at 201, 93 S.Ct. at 383. The Seventh Circuit also held in *Walton* that in-court identifications are reliable, even when the initial identification was not given until weeks or months after the crime. *Id.,* 852 F.2d at 275. Thus, the fact that the identification proved accurate and was given several times on the day of the crime clearly satisfies the fifth factor of the balancing test.

The Court is convinced that the in-court identification was reliable enough to cure any unconstitutional suggestiveness or taint imposed by the pre-trial identification procedures. Thus, Colley has failed to state a meritorious due process claim.

### V. CONCLUSION

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 2254(a), Counts I and II of Donald Colley's, Original Petition (Doc # 4) are DISMISSED with prejudice for failure to state cognizable constitutional claims and Count III of the Amended Petition for a Writ of Habeas Corpus (Doc. # 17)

is DISMISSED with prejudice for failure to state meritorious constitutional claims.