**UNITED STATES of America ex rel. Michael McCOY, Petitioner,**

v.

**George C. WELBORN, Warden, Menard Correctional Center, and the Attorney General of the State of Illinois, Respondents.**

**No. 93 C 1841.**

United States District Court, N.D. Illinois, Eastern Division.

July 12, 1994.

Michael McCoy, pro se.

Terence Madsen, IL Atty. Gen. Office, Chicago, IL, for respondents.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the petition of Michael McCoy ("McCoy") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the petition is denied.

### FACTS [1]

Nazih Youssef ("Youssef") owned and operated a food and liquor store at 3615 South State Street, across from a Chicago Housing Authority apartment complex, with the help of three employees, Hussein Awwad ("Awwad"), Mohammed Ghrayyib ("Ghrayyib"), and Achmaad Hassan ("Hassan"). In addition to them, Youssef had also hired Wayne Millighan ("Millighan") to work at his establishment.

On the night Millighan started working for Youssef, Awwad noticed that Millighan was watching where the cash was kept inside the store instead of working. Subsequently, Awwad related his observation to Youssef. Upon hearing of Millighan's activity, Youssef paid Millighan for the night's work and then terminated him. The next time Awwad encountered Millighan was on April 9, 1986, between 11:00 p.m. and 11:30 p.m. Awwad observed Millighan come into the store with another person, purchase liquor, drink inside the store, and harass other customers.

Approximately 1:00 a.m. on April 10, 1986, Loretta Jackson ("Jackson") and her fiancee Donel Collins ("Collins") were leaving her friend Cecelia Hale's ("Hale") apartment across the street from the store. As they were leaving, Millighan approached them. An argument ensued between Collins and Millighan which resulted in Millighan shooting Collins with a silver handgun. Jackson summoned her brother to take Collins to the hospital. While Jackson's brother drove Collins to the hospital, Hale remained in her apartment and from her window observed Millighan and two other males enter Youssef's store.[2]

At about this time, Awwad was working in the stock room and Ghrayyib was making coffee in the grocery section of the store near the cash register. Youssef was in the liquor section at the back of the store and Hassan was working in the cooler. As Awwad worked in the stock room, he heard a noise at the locked door which separated the lobby area and the restricted counter area of the store. Awwad proceeded to the front of the store to investigate the source of that noise. As he approached the front, he observed Millighan holding a silver, automatic handgun and heard him announcing a robbery. Millighan ordered Ghrayyib to open the cash register. Ghrayyib complied with his demand. Then, Millighan grabbed the tray and began taking the money.

As Millighan was taking the money, Awwad heard a single gunshot emanating from

---

1. The following facts are drawn from the Illinois Appellate Court's opinion in *People v. McCoy*, 238 Ill.App.3d 240, 179 Ill.Dec. 413, 606 N.E.2d 245 (1992), *appeal denied*, 151 Ill.2d 572, 186 Ill.Dec. 390, 616 N.E.2d 343 (1993), and are given the presumption of correctness required under 28 U.S.C. § 2254(d). *See also Sumner v.*

*Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

2. The record does not reveal whether Hale, upon seeing Millighan enter Youssef's store, called the police.

the back of the store near the liquor section. When the shot rang out, Millighan yelled at his accomplices to vacate the store. Millighan exited along with another male offender who was standing near the doorway. After the two exited, Awwad observed the third male running from the area where the shot came from holding a black revolver and a money bag. Awwad had seen this third offender before that morning. As the third offender ran for the doorway, he passed Awwad within four to five feet of him.

Immediately after the three robbers fled, Awwad ran to the back of the store only to discover Youssef covered with blood and lying on the floor of a small office where he kept the store money. After being summoned, Chicago Police Detective Leo Wilkosz ("Wilkosz") arrived at the store approximately 1:40 a.m. Detective Wilkosz interviewed two eyewitnesses to the robbery and compiled a description of the shooter. The shooter was described as a dark-complected black male, between twenty-five and thirty years of age, five feet six to five feet eight inches in height, 160 to 190 pounds in weight, wearing a mustache, a black baseball cap, a black waist-length leather jacket, blue jeans, dark gym shoes, with a gold earring in his left ear, and carrying a dark, long-barrelled handgun.

On April 12, 1986, Chicago Police Officer Michael Ballard ("Ballard") questioned various people in the neighborhood where the Youssef murder took place. During his street investigation, an individual known to Officer Ballard only as "John" related that McCoy and another individual were responsible for the homicide. Although Officer Ballard had spoken to John before, John had never given any other information which led to a felony arrest prior to that date. John's detailed description of McCoy matched the description Officer Ballard read in the police report.

After receiving a radio call later that afternoon, Officer Ballard and his partner proceeded to 3618 South State Street. Upon arriving, the officers observed McCoy sitting in a vehicle directly across from Youssef's store. Officer Ballard requested McCoy to exit the vehicle. At that time, McCoy was wearing a black baseball cap, a black leather jacket, a jogging outfit, and a gold earring in his left ear. McCoy was twenty-four years of age, five feet nine inches in height, and 170 pounds in weight. Based on the information Officer Ballard gathered from the police report and John, he placed McCoy under arrest.

Subsequent to the arrest, the police placed McCoy in a line-up. Awwad identified McCoy as the male offender who came running from the area where the shot rang-out with a black revolver and a money bag in his hands. Awwad identified McCoy again in court during McCoy's trial.[3] In addition to Awwad's identification of McCoy, both Ghrayyib and Hassan identified McCoy from a photograph array and in court during his trial. Ghrayyib identified McCoy as the man running away from the area where the shot came from holding a money bag and a black revolver. Hassan identified McCoy as the man who came in earlier that evening with Millighan drinking inside the store. McCoy's defense was that he was not involved in the shooting or the robbery. One witness testified on behalf of McCoy that she observed someone running with a tray of money near the store at the time in question, but that McCoy was not present near the store.

The jury deliberated and returned a verdict of guilty as to both charges of murder and armed robbery. The Circuit Court of Cook County, Illinois, sentenced McCoy to life imprisonment without parole for murder and thirty years for armed robbery, to be served concurrently.

McCoy files this petition for writ of habeas corpus and raises the same issues presented on his direct appeal to the Illinois Appellate Court. He argues that the court should grant habeas relief because: (1) Officer Ballard did not have probable cause to arrest him; (2) Officer Ballard's testimony regarding John's hearsay statements violated McCoy's right to confront witnesses; (3) the State of Illinois ("State") improperly introduced evidence regarding Millighan's shooting of Collins; and (4) the prosecutor's infer-

---

3. Wayne Millighan was charged and tried separately.

ences about the blood stain on McCoy's shoe during the closing argument were highly inflammatory and prejudicial.

## DISCUSSION

■ Before the court may reach the merits of a petition for a writ of habeas corpus, it must first ascertain whether the petitioner has met two distinct procedural requirements. *Jones v. Washington,* 15 F.3d 671, 674 (7th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2753, 129 L.Ed.2d 870 (1994). The first requirement is that of exhaustion. 28 U.S.C. § 2254(b); *Harris v. Champion,* 15 F.3d 1538, 1554 (10th Cir.1994). Under this requirement, the petitioner must exhaust all possible state remedies before he or she may file a petition for a writ of habeas corpus. *Jones,* 15 F.3d at 674. The second requirement is that of preservation of issues. *Id.,* Under this requirement, the petitioner must have raised the claims made in his petition in the state court proceedings. *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513–14, 30 L.Ed.2d 438 (1971). Failure to satisfy both requirements results in procedural default and denial of the petition. *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989).

In the instant petition, McCoy has satisfied both of these procedural requirements. First, on February 22, 1993, the Supreme Court of Illinois denied McCoy's petition for leave to appeal, thereby exhausting his available state remedies. Second, the issues McCoy raises in his habeas petition are identical to the issues presented to the Illinois Appellate Court. *See People v. McCoy,* 179 Ill.Dec. at 415, 606 N.E.2d at 247. Thus, McCoy has satisfied the necessary procedural requirements for filing a petition under § 2254. Having determined that the procedural requirements are satisfied, the court now turns to the merit of the four claims McCoy asserts.

In his first claim, McCoy argues that Officer Ballard arrested him without probable cause and, thus, the trial court erred in denying his motion to quash his arrest and suppress evidence. The Illinois Appellate Court disagreed with McCoy's position and held

that there was sufficient factual basis to support the trial court's finding of probable cause to arrest. *Id.* 179 Ill.Dec. at 418, 606 N.E.2d at 250. In reaching this conclusion, the Illinois Appellate Court discussed the relevant facts and considered the applicable law. *Id.*

■ Lack of probable cause to an arrest is not a proper basis for granting relief under § 2254. *Pierson v. O'Leary,* 959 F.2d 1385, 1391 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992); *Colley v. Peters,* 814 F.Supp. 1390, 1397 (C.D.Ill. 1992); *King v. Greer,* 672 F.Supp. 339, 340 (N.D.Ill.1987). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). This principle is based on the long standing rule that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews,* 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980).

■ A petitioner has received an opportunity for full and fair litigation of his Fourth Amendment claim when "(1) the petitioner has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of the petitioner's fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts." *Pierson,* 959 F.2d at 1391. In the instant case, the court finds that McCoy had an opportunity for full and fair litigation of his Fourth Amendment claim. McCoy charges that the state courts applied the incorrect standard of law in addressing his Fourth Amendment claim. Nonetheless, McCoy fails to support his charge. Rather, his argument is devoted to relitigating the facts and application of the law. McCoy reaches a different conclusion as to the propriety of the arrest, but such a

conclusion is not sufficient to substantiate the accusation that the state courts misapplied the relevant law. Therefore, the first claim does not warrant habeas relief.

In his second claim, McCoy contends that Officer Ballard's testimony regarding John's hearsay statement about McCoy's involvement in the murder violated McCoy's right to confront all witnesses against him. Before trial, McCoy moved to exclude evidence of John's conversation with Officer Ballard. The trial court ruled that Officer Ballard may testify that he talked to people in the neighborhood and as a result of such investigation he sought McCoy. The trial court further ruled that Officer Ballard may not testify as to John's description of McCoy. But, during the examination of Officer Ballard on the witness stand, he inadvertently read a portion of his report that read, "but said Michael Iceberg McCoy and Insane Wayne were the people the police were looking for." McCoy moved for mistrial which the trial court denied. Instead, the trial court struck the statement and instructed the jury to disregard it.

■ The Illinois Appellate Court agreed with McCoy that Officer Ballard's inadvertent testimony directly implicated McCoy in violation of his right to confrontation. *McCoy*, 179 Ill.Dec. at 419, 606 N.E.2d at 251. Nonetheless, the appellate court affirmed the conviction because it found that the violation was harmless. *Id.* While this court agrees that any error that may be attributable to the inadvertent testimony was a harmless error, it cannot concur with the conclusion that such testimony violated McCoy's right to confrontation. The presumption of correctness that the court must apply to state court findings are limited only to facts and not to issues involving questions of law or to mixed questions of law and fact. *Savory v. Lane*, 832 F.2d 1011, 1018 (7th Cir.1987). Thus, the Illinois Appellate Court's holdings on the issues of confrontation right and the harmless error are subject to independent federal review. *Id.*

The Sixth Amendment of the United States Constitution requires that defendants in criminal prosecutions have the right to confront all witnesses against him or her.

*Lee v. McCaughtry*, 892 F.2d 1318, 1324 (7th Cir.), *cert. denied*, 497 U.S. 1006, 110 S.Ct. 3244, 111 L.Ed.2d 754 (1990). The purpose of the Confrontation Clause is to "advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (quoting *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936–37, 26 L.Ed.2d 489 (1970)). The evidentiary rules governing hearsay are designed to protect the similar values which the confrontation clause seeks to preserve. *Lee*, 892 F.2d at 1324.

■ Generally, statements offered not for the truth of the matter asserted, but to explain the context of the witness' testimony or to explain the reason for the investigation are not hearsay and do not violate the Confrontation Clause because there is no need to evaluate the truth of such statement. *United States v. Martinez*, 939 F.2d 412, 414 (7th Cir.1991); *United States v. Mejia*, 909 F.2d 242, 247 (7th Cir.1990); *Lee*, 892 F.2d at 1325. It is not an absolute rule, however, that reference to a non-hearsay statement will never violate the Confrontation Clause. *Id.* at 1325. A non-hearsay statement may violate the Confrontation Clause if the trial court fails to give proper limiting jury instructions, if the prosecutor destroys the non-hearsay nature of the statement during the trial by arguing the truth of the matter, and if the statement implicates the defendant. *Id.* at 1325–27; *see also Stoner v. Sowders*, 997 F.2d 209, 213–14 (1993) (held that the non-hearsay statement violated the Confrontation Clause because it was the only evidence connecting defendant to the crime).

■ In this case, the State did not offer, introduce, or solicit the inadvertent statement for the truth of the matter asserted, but it simply "slipped-out" while Officer Ballard was reading a portion of his report describing the background of his investigation which ultimately lead to McCoy's arrest. Additionally, the State did not emphasize the inadvertent statement or argue to the jury that there was no reasonable doubt because

John's statement directly implicated McCoy. Furthermore, the trial court struck the inadvertent statement and instructed the jury to disregard it. The court must presume that the jury understood and followed the limiting instruction. *Greer v. Miller,* 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987); *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985). Under these circumstances, the statement inadvertently introduced and subsequently stricken did not violate McCoy's right to confront under the Sixth Amendment.

Even if Officer Ballard's mistake can be characterized as a constitutional error, such error was harmless and does not warrant habeas relief. McCoy argues that in order for a constitutional error to be harmless, the State must prove that the error was "harmless beyond a reasonable doubt," the standard enunciated by the United States Supreme Court in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The *Chapman* standard is still recognized by the United States Supreme Court as the standard governing harmless constitutional error analysis, *Sullivan v. Louisiana,* —— U.S. ——, ——, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), and has been applied to Confrontation Clause violations. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *Ashford v. Director of Illinois Dept. of Corrections,* 871 F.2d 680, 688 (7th Cir.1989).

■ The United States Supreme Court in *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), however, announced that the *Chapman* standard is no longer applicable to habeas proceedings. *Id.* at ——, 113 S.Ct. at 1721; *Tague v. Richards,* 3 F.3d 1133, 1139 (7th Cir.1993). Instead, federal courts are instructed to follow the less vexatious standard announced in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), to review constitutional errors in habeas proceedings. *Brecht,* —— U.S. at —— – ——, 113 S.Ct. at 1721–22. Under the *Kotteakos* standard, a constitutional error is deemed harmless, unless the habeas petitioner establishes that the error "had substantial and injurious ef-

fect or influence in determining the jury's verdict." *Id.* at ——, 113 S.Ct. at 1722. The *Brecht* Court reasoned that:

> Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief on trial error unless they can establish that it resulted in "actual prejudice." *See United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). The *Kotteakos* standard is thus better tailored to the nature and purpose of collateral review, and more likely to promote the considerations underlying our recent habeas cases. Moreover, because the *Kotteakos* standard is grounded in the federal harmless-error rule (28 U.S.C. § 2111), federal courts may turn to an existing body of case law in applying it.

*Id.* Thus, the court will apply the *Kotteakos* standard rather than the *Chapman* standard in reviewing the alleged violation of the Confrontation Clause.

■ Under the *Kotteakos* standard, McCoy has failed to demonstrate that the inadvertently read and later stricken statement, "Michael Iceberg McCoy and Insane Wayne were the people the police were looking for[,]" resulted in actual prejudice. First, the trial evidence preceding the statement revealed that the police was looking for McCoy and that his nickname was "Iceberg." Second, the trial court struck the statement and instructed the jury to disregard it. Third, the State did not use the stricken statement to establish the connection between the murder and McCoy. The State had several eye-witnesses who positively identified McCoy in and outside the courtroom as the gunman who shot Youssef. Thus, any constitutional error attributable to the stricken statement was harmless. Accordingly, McCoy's second claim does not warrant habeas relief.

In his third claim, McCoy argues that the trial court erred when it denied his motion *in limine* to exclude evidence of Millighan's shooting of Collins immediately before the robbery. He maintains that the prejudicial effect outweighs any probative value that may flow from the testimony about Millighan's bad conduct. The State responds that the prior bad act of Millighan was necessary

to buttress its witnesses' identifications of McCoy as the individual who shot Youssef and to discount any suggestion that Millighan may have been the shooter.

■ Admissibility of evidence is a matter of state law and is not subject to federal habeas review, unless the petitioner can demonstrate that the erroneous evidentiary ruling violated the defendant's right to a fundamentally fair trial under the Due Process Clause. *Lilly v. Gilmore*, 988 F.2d 783, 789 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993). In this case, McCoy fails to establish that the introduction of evidence relating to Millighan's prior bad act injured his right to a fundamentally fair trial. The testimony regarding Millighan was relevant and material to the issue of identification. Additionally, the examination of the Illinois Appellate Court's opinion provides that the trial court's decision to permit the evidence of the Collins' shooting was not arbitrary under Illinois law. Furthermore, the State's evidence describing the Collins' shooting incident did not implicate McCoy to that shooting. Under these circumstances coupled with eye-witness testimony that McCoy was the individual who shot Youssef, any prejudicial effect on McCoy that may result from Millighan's bad conduct is tenuous. Thus, the subject evidentiary ruling of the trial court is not a proper basis for granting a writ of habeas corpus.

■ In his fourth and last claim, McCoy criticizes the prosecutor's conduct during the closing argument. The prosecutor made references to the blood on McCoy's gym shoe and argued to the jury that the blood on the shoe was that of Youssef and that McCoy got the blood on his shoe when he shot Youssef at close range. The prosecutor did concede, however, that there was no conclusive scientific evidence to establish the connection. McCoy contends that this argument was highly prejudicial and inflammatory especially because there was no evidence to support the inference. At the end of the trial, the trial court gave the following instructions in addition to the instructions relating to the actual charges pending against McCoy:

> Additional instructions given told the jury that closing argument was not evidence; argument not based on evidence should be disregarded; it was the jury's duty to determine the facts in the case from the evidence presented; they should disregard testimony which the court had refused or had stricken; they should only consider testimony of witnesses and exhibits which the court received; defendant was presumed innocent; the State must prove defendant guilty beyond a reasonable doubt; and defendant was not required to prove his innocence.

*McCoy*, 179 Ill.Dec. at 421, 606 N.E.2d at 253. The Illinois Appellate Court held that the prosecutor's argument was within the permissible boundary of logical inferences to be drawn from the evidence and any error associated with the argument was cured by the instructions given to the jury. *Id.*

Because habeas relief is only available for those petitioners who are incarcerated in violation of the Constitution or federal law, *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir.1991), the alleged prosecutorial misconduct must be so serious that it contaminated the truth-seeking process of the trial, for it to be a ground for relief under § 2254(a). *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

Under the facts of this case, the court agrees with the Illinois Appellate Court's conclusion on this issue. As discussed previously, the court presumes that the jury strives to understand the instructions and to follow them when given. *See Greer,* 483 U.S. at 766 n. 8, 107 S.Ct. at 3109 n. 8. The instructions given to the jury coupled with the evidence against McCoy, the court cannot conclude that the prosecutor's inferential argument was sufficiently egregious to poison the entire process, thereby requiring a new trial. Accordingly, the court rejects the fourth claim as a basis for granting habeas relief.

### *CONCLUSION*

For the foregoing reasons, McCoy's petition filed under 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED.